No. 22421.

DAVID PRIMOCK *v.* E. BENTLEY HAMILTON.
(452 P.2d 375)

Decided April 1, 1969.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

PLAINTIFF, proprietor of a furniture store in Durango, sued his landlord, the defendant, for damages to a part of his inventory on February 25 and March 10, 1964, caused by the bursting of hot water pipes which were a part of the heating system of the building. The complaint was based upon the negligence of the defendant (1) in failing to keep the pipes "in a safe condition, although he knew, or should have known, of the unsafe condition of said pipes"; (2) in failing "to inspect, repair, and maintain said metal pipes and said metal pipes became defective and unsafe, although the defendant knew or should have known, of the defective and unsafe condition" of the pipes; and (3) in that he "retained full

control of said metal pipes and negligently and carelessly permitted said pipes to be and become and remain out of repair and in a defective and unsafe condition; and defendant knew, or should have known of such condition."

The defendant answered by way of a general denial and, in addition, specifically alleged that (1) "the injuries complained of were contributed to by the negligence of the plaintiff"; that (2) "plaintiff failed to inspect the premises at the time he entered into the lease agreement * * * and assumed the risk of injury to his property"; and that (3) "the injuries complained of were proximately caused by the sole negligence of the plaintiff."

The defendant, having taken the deposition of the plaintiff, filed a motion for summary judgment, based upon the statements of the plaintiff made in the deposition and defendant's own affidavit attached to his motion. The plaintiff filed a counter-affidavit. The court then entered judgment for the defendant, stating:

"Under the undisputed material facts, liability of defendant can only be predicated upon the theory that defendant is liable to plaintiff as an insurer, since it cannot be said defendant knowingly permitted this condition to exist. Plaintiff had an equal means of knowledge with the defendant.

"The law does not impose the liability of an insurer upon a landlord in favor of his tenant. * * *"

. A concise statement of the factual matters contained in the supporting documents before the court will suffice for an understanding of our disposition of the case.

On December 1, 1959, plaintiff entered into a written lease with defendant's predecessor in interest, the Twentieth Century Investment Company, concerning a main floor storeroom and the basement of the Century building. The remainder of the building contained another store, offices and apartments. A single heating system provided heat for the whole building. The furnace was

situated in the basement. Pipes which supplied hot water to the upper floors extended both vertically and horizontally through the plaintiff's storeroom, and were exposed in part and concealed in part by the walls. Upon the sale of the building in September 1963, the lease was assigned to the purchaser, the defendant here.

The lease contained these provisions, which are pertinent to our discussion: (Lessor is defendant — Lessee is plaintiff.)

"The Lessor agrees to furnish heat free of charge for said premises. * * *

* * *

"Lessee further agrees to furnish Lessor or its officers, with one key to the front door of said premises, in order to allow Lessor access to the plumbing affecting said premises and the rest of the building in which the said premises are located, and Lessor covenants and agrees not to disturb any of the inventory or property belonging to Lessee located in said promises, except to move such stock or inventory as is necessary to gain access to said plumbing."

In its judgment the trial court found certain facts to be "uncontroverted," among which were these:

"2. Until the moment when the water pipes in question broke, neither plaintiff nor defendant knew or had reason to believe that these particular pipes were defective.

* * *

"4. Some years prior to the time defendant became the owner of the building, other pipes located in this general area had broken and the then owner had paid plaintiff for the damage. This defendant had not agreed to pay for any such damages.

"5. Prior to the breaking of these pipes, plaintiff did not notify defendant of the existence of any defect in them, as he knew of none.

* * *

"7. There was no duty on plaintiff to keep these pipes in repair.

"8. There was no active negligence on the part of the defendant which resulted in the alleged damage to plaintiff.

* * *

"10. The lease does not require the defendant to keep plaintiff's premises in a safe condition.

"11. Defendant inspected the premises about six months before the break in the company of plaintiff and an architectural and engineering firm. Such inspection did not reveal the defective condition of these pipes.

"12. Plaintiff has never notified defendant that any of the pipes were defective including the ones here in question.

"13. There is no genuine issue of any material fact."

Before proceeding to an analysis of the foregoing findings of the trial court, it is advisable to set forth the guidelines by which we test the correctness of the court's disposition of the controversy.

Summary judgment, under R.C.P. Colo. 56, is a drastic remedy and is never warranted except on a clear showing that there is no genuine issue as to any material fact. A party is not compelled to try his case on affidavits with no opportunity to cross-examine affiants.

A movant for summary judgment has the burden of clearly demonstrating the absence of any genuine issue of fact, and any doubt as to the existence of such an issue is resolved against the movant. Any issue of fact must be determined by the court or jury at a trial and should not be determined by the court on a motion for summary judgment. *Flanders v. Kochenberger,* 118 Colo. 104, 193 P.2d 281; *Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552.

Returning now to a review of the court's findings, we note in passing that there were statements in defendant's affidavit, if uncontradicted, to support them. An examination, however, of the deposition and counteraffidavit of the plaintiff discloses several areas which

raise doubts in our minds as to the absence of a genuine factual issue. A few comparisons should suffice to demonstrate the existence of a disagreement between the parties as to several material facts.

The court, in stating "that liability of defendant can only be predicated upon the theory that defendant is liable to plaintiff as an insurer, since it cannot be said defendant knowingly permitted this condition to exist," completely ignored the plaintiff's theory of negligence as set forth in his complaint. Also, there were statements in the deposition and the counter-affidavit which, if believed by the trier of facts, would tend to prove the allegations of the complaint. Two of plaintiff's statements in this category follow in the next paragraph.

In finding No. 2, the court found that the defendant did not know or have any reason to know that the pipes were defective until the pipes actually broke. In plaintiff's complaint he alleged that the pipes "were old, faulty, corroded, defective, and deteriorated." In his counter-affidavit, he stated:

"1. That on or about August 8, 1963, or later that fall, he told Defendant that the plumbing had broken down several times, and that the landlord who preceded Defendant had paid him about $4,000 or $5,000 for furniture that had been damaged by the water from such breakdowns.

"2. That on or about August 8, 1963, or later that fall, he recalls telling Defendant, while showing the Defendant a portion of the plumbing that had been replaced by a small section of new pipe, that the repairman, or plumbers, had told him that the old plumbing near this new section of pipe needed replacing."

The foregoing excerpts from the counter-affidavit should have disabused the court of its conclusion in its finding No. 2, as well as in Nos. 5 and 12, which are set out in full, *supra*.

It appears to us that findings Nos. 7 and 10 are mixed findings of fact and conclusions of law.

■ In No. 7, the court held that "there was no duty on plaintiff to keep these pipes in repair." Presumably this is based on the fact that the defendant had a key to plaintiff's premises so that he could have access to the heating plant and the plumbing which served the entire building. Then the court found in No. 10 that "the lease does not require the defendant to keep plaintiff's premises in a safe condition." In effect, the court held that neither party had any responsibility for the heating system. This is not in accord with prior holdings of this court. See, *e.g., Capitol Amusement Co. v. Anheuser-Busch, Inc.,* 94 Colo. 372, 30 P.2d 264. The landlord is responsible for the maintenance of that part of the building which remains under his control. Whether the defendant was negligent in this regard is a question of fact for determination on a trial.

There are other findings of fact about which there is sufficient doubt that their determination should only be made by the judge or the jury after a full trial. To analyze them here would serve no worthwhile purpose.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

MR. JUSTICE HODGES, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.