Hermon L. TAPLEY, Cora E. Tapley, in their individual capacities, and Hermon L. Tapley as Administrator for the estate of Ronald Lee Tapley, Plaintiffs-Appellants,

v.

GOLDEN BIG O TIRES,
Defendant-Appellee.

No. 81SA430.

Supreme Court of Colorado,
En Banc.

Nov. 7, 1983.

James A. Windholz, J. Scott McComas, Boulder, for plaintiffs-appellants.

Wood, Ris & Hames, P.C., Charles E. Weaver, Denver, for defendant-appellee.

LOHR, Justice.

This wrongful death and survival action stems from the death of Ronald Lee Tapley, who died as a result of inhalation of exhaust fumes from a used automobile that he had recently acquired from defendant G & G Auto Sales (G & G). The vehicle bore a safety inspection sticker issued earlier by defendant Golden Big O Tires (Big O). The decedent's parents, Hermon L. Tapley and Cora E. Tapley, brought the wrongful death action in Jefferson County District Court against G & G, its owners and one of its employees, and against Big O and one of its employees. Hermon L. Tapley, as administrator of his son's estate, also asserted a survival claim against the defend-

ants.[1] The trial court granted Big O's motion for summary judgment, and the plaintiffs appealed.[2] We affirm in part, reverse in part, and remand this case to the trial court with directions.

I.

On April 28, 1979, 19-year-old Ronald Lee Tapley purchased a used 1967 Chevrolet automobile from G & G in Golden, Colorado, for the purpose of traveling to Billings, Montana, where he had secured employment. He departed for Billings shortly thereafter. On April 29, Tapley's body was discovered lying in the vehicle, which was parked by a roadside in Wyoming with the motor running. His death was caused by carbon monoxide poisoning. Inspection of the automobile disclosed that approximately twelve inches of tailpipe was missing, allowing the exhaust fumes to enter the car rather than to be vented behind it. The end of the broken tailpipe was rusted. On March 13, 1979, Big O had inspected the vehicle at the request of G & G and had issued a safety inspection sticker reflecting successful completion of that examination.[3]

The plaintiffs brought this action under the survival and wrongful death statutes. The issues on appeal involve only Big O, against which compensatory relief was sought by Tapley's parents for negligent failure to detect the deficiency in the tailpipe when the vehicle was inspected for issuance of the safety inspection sticker. Those plaintiffs also claimed exemplary damages under section 13–21–102, C.R.S. 1973, asserting that Big O's conduct was attended by circumstances of wanton and reckless disregard of the rights and feel-

1. The record indicates that the named employees of Big O and G & G were not served with process and that all claims against G & G and its owners have been settled. Thus, only the claims against Big O which are involved in this appeal remain to be resolved.

2. We accepted jurisdiction because the plaintiffs raised a question concerning the constitutionality of the wrongful death statute, section 13–21–203, C.R.S.1973. *See* section 13–4–102(1)(b),

C.R.S.1973. Although we do not reach this issue, we have elected to retain the case for decision, rather than to remand it to the Colorado Court of Appeals, in the interest of judicial economy.

3. The facts recited in this paragraph are established by uncontroverted affidavits and deposition testimony in the record.

ings of the decedent and his parents.[4] Additionally, Hermon L. Tapley and Cora E. Tapley claimed a civil conspiracy, based on an alleged agreement among the defendants to evade the requirements of the safety inspection law, sections 42–4–301 to –306, C.R.S.1973, and of the regulatory prohibition, issued pursuant to section 12–6–104, C.R.S.1973, against sale of a vehicle in a defective condition. The plaintiff estate administrator also asserted certain survival claims under section 13–20–101, C.R.S.1973, and sought exemplary damages incident to those claims. Big O moved for summary judgment on all claims for relief. The trial court granted the motion and this appeal followed.

## II.

Summary judgment is a drastic remedy and is not to be granted absent a clear showing that there is no genuine issue as to any material fact. *E.g., Ellerman v. Kite,* 625 P.2d 1006 (Colo.1981); *Jones v. Dressel,* 623 P.2d 370 (Colo.1981); *Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552 (1946). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *E.g., Ellerman v. Kite, supra; Ginter v. Palmer and Co.,* 196 Colo. 203, 585 P.2d 583 (1978); *Primock v. Hamilton,* 168 Colo. 524, 452 P.2d 375 (1969). Moreover, a party against whom a motion for summary judgment is made must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts. *O'Herron v. State Farm Mutual Automobile Insurance Co.,* 156 Colo. 164, 397 P.2d 227 (1964).

With the foregoing principles to guide us, we review the relevant factual record, which consists of various affidavits and depositions, to assess the correctness of the award of summary judgment in favor of Big O.

At his deposition, Billy Gene Gross, a co-owner of Big O, testified that the safety inspection required prior to issuance of inspection stickers includes a check of the exhaust system for leaks. Although his signature on the safety sticker indicated to Gross that he had inspected the Tapley vehicle on March 13, 1979, he had no specific recollection of the inspection. He stated that the customary way to check an exhaust system for leaks is to plug the exhaust with a rag and listen for the sound of escaping fumes, and to supplement this procedure with a visual inspection. Gross also explained that the exhaust system must be suitably constructed to evacuate the exhaust fumes outside the body line of the car. When shown a picture of the broken tailpipe on the Tapley vehicle as it appeared after Tapley's death, Gross testified that it would not pass a safety inspection. The picture depicts a broken pipe with extensive rust at and near its end. Hermon Tapley stated in an affidavit filed in opposition to Big O's motion for summary judgment that he had inspected the vehicle after his son's death "and discovered that it had a severely rusted tailpipe which was approximately twelve inches too short to vent exhaust beyond the underside of the vehicle." George Hoopes, a principal in Big O, related in his deposition that, when he saw the vehicle after the death of Ronald Tapley, the muffler and what was left of the exhaust pipe were rusted. He minimized the amount of rust but said that the

---

**4.** The decedent's parents also claimed negligence per se based on violation of the laws concerning motor vehicle safety inspections, sections 42–4–301 to –306, C.R.S.1973, and violation of a regulation issued under section 12–6–104, C.R.S.1973 (1978 Repl.Vol. 5), of the automobile dealer licensing law, requiring that vehicles when sold be in a safe condition. The individual plaintiffs requested exemplary damages in connection with each of these claims. The trial court did not treat these negligence per se claims separately, but regarded them as part of a single negligence claim for relief. Therefore, the court dismissed the negligence per se claims as well when it concluded that Big O was entitled to summary judgment on the individual plaintiffs' negligence claim for relief. In view of our conclusion that summary judgment for negligence was erroneously granted, the negligence per se claims must be reinstated and it is unnecessary to address whether the trial court should have considered them separately in ruling on the summary judgment motion.

way the vehicle was parked prevented him from inspecting it to his satisfaction. Hoopes stated that he always checks the exhaust systems of used vehicles held for sale by G & G.

In his deposition, Hermon Tapley noted that when he examined the vehicle before his son purchased it the tires were smooth. Gross testified in his deposition that a safety inspection includes examination of the tires to assure that they have at least $\frac{2}{32}$ inch of tread.

■ The trial court ruled that even if the plaintiffs could establish at trial that Big O issued a safety inspection sticker on March 13, that the tailpipe thereafter broke off causing it to emit exhaust fumes under the car, and that there was evidence of rust, "it would not be sufficient for the Court to submit it to a jury." The photograph of the tailpipe and the affidavit of Hermon Tapley, however, reflect that the rust and corrosion were substantial. Resolving doubts against Big O, as we must on a motion for summary judgment, we believe that the evidence was sufficient to raise a genuine question whether the tailpipe was defective when Big O conducted the safety inspection and whether, by failing to discover that fact and by issuing the safety inspection sticker, Big O was negligent. Therefore, the trial court erred in granting summary judgment for Big O on the negligence claims.[5]

■ We agree with the trial court, however, that the record reflects no genuine issue of material fact suggesting a conspiracy among Big O and G & G, their owners or employees, to issue an inspection sticker notwithstanding the defective nature of the vehicle. Gross estimated that the G & G

safety inspection business constituted "probably one-tenth of one percent or even less" of Big O's business. He testified at his deposition that approximately ten percent of the vehicles submitted by G & G to Big O for inspection fail to pass the examination and are rejected. Neither he nor anyone else in the Big O business is acquainted with Mr. and Mrs. Hoopes, the owners of G & G, other than on a business basis. George Hoopes testified on his deposition that G & G has had safety inspections performed by Big O and that G & G purchases supplies and other items from Big O. G & G also has safety inspections performed by others. Hoopes stated that he knows the owners of Big O only on business terms. G & G gets no discounts from Big O. We discover no evidence in the record to suggest that Big O conspired with G & G to issue a safety inspection sticker for the Tapley vehicle or for any defective cars. The plaintiffs urge that Gross' testimony that a check of the exhaust system is a part of every safety inspection indicates that he either negligently or purposely failed to reject the vehicle as unsafe. We believe on this state of the record, however, that the suggestion that the vehicle was known by Big O to be defective and was intentionally passed notwithstanding that knowledge falls in the realm of conjecture. The trial court properly granted summary judgment for Big O on the plaintiffs' conspiracy claims.

Shortly after the complaint was filed, Big O moved to dismiss all claims for punitive damages, and the trial court granted the motion. The plaintiffs ask that we review the correctness of that ruling. Because it

---

**5.** After the trial court granted summary judgment for Big O, the plaintiffs moved for reconsideration of that ruling and supplemented their motion with an affidavit of Don R. Mosher, a metallurgist retained by the plaintiffs. Based on inspection and testing, Mosher stated that the tailpipe was corroded and deteriorated and that it was "in substantially the same condition at the time of the issuance of the safety inspection sticker on March 13, 1979, as it was ... [at] the time of [Mosher's] inspection and analysis on July 29 and 30, 1981." Big O objects to

consideration of this affidavit because it was filed after the court's ruling on the summary judgment motion rather than "prior to the date of hearing," as authorized by C.R.C.P. 56(c). While we believe that consideration of the late-filed affidavit in evaluating the motion for reconsideration was within the court's discretion, we hold that the other materials before the trial court were sufficient to raise a genuine issue of material fact on the negligence question without considering the Mosher affidavit.

is merely an interlocutory order, we elect not to do so.

We affirm the trial court's judgment dismissing the conspiracy claims, reverse its judgment dismissing the other claims against Big O, and remand this case for further proceedings consistent with this opinion.

