Steven **PHAM**, as personal representative of the estate of Louis Diep Pham, Kinh B. Pham and La T. Bui, natural parents of Louis Diep Pham, deceased; Khanh Ba Pham; Bang Le; Minh Ngoc Ha; Vu Duy Nguyen; and Kieu Trang Thi-Do, Plaintiffs–Appellants,

v.

**OSP CONSULTANTS, INC.,**
Defendant–Appellee.

No. 98CA0911.

Colorado Court of Appeals,
Div. IV.

July 8, 1999.

Rehearing Denied Aug. 26, 1999.

Certiorari Denied Feb. 7, 2000.

The Law Firm of William W. Muhr, William W. Muhr, David A. Harper, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Lasater & Associates, P.C., J. Scott Lasater, Edward M. Allen, Littleton, Colorado, for Defendant–Appellee.

Opinion by Judge BRIGGS.

Plaintiffs, Khanh Ba Pham, Bang Le, Minh Ngoc Ha, Vu Duy Nguyen, Kieu Trang Phi–Do, Steven Pham, as personal representative of the estate of Louis Diep Pham, and Kinh B. Pham and La T. Bui, as natural parents of Louis Diep Pham, deceased, appeal the summary judgment entered in favor of defendant, OSP Consultants, Inc. (OSP). Plaintiffs assert the trial court erred in concluding that OSP was not liable under the doctrine of *respondeat superior* for damages caused by the negligence of an OSP employee (the employee) in an automobile accident. We affirm.

OSP temporarily assigned several employees, who lived in another state, to work as a crew laying cable in Colorado. On the night of the accident, the employee drove to a bar with two other crew members. While returning to their lodging several hours later, the employee drove his vehicle through a traffic signal and collided with plaintiffs' car. The occupants of plaintiffs' car were all injured, and one died from his injuries a few months later. At the time of the accident, the employee was legally intoxicated.

Plaintiffs sued the employee and OSP, claiming the employee was negligent and OSP was liable for that negligence under the doctrine of *respondeat superior*. Plaintiffs and OSP filed cross-motions for summary judgment on *respondeat superior* liability and submitted a statement of stipulated facts.

The trial court bifurcated trial on the issues of liability and damages. On the day trial was scheduled to commence on liability, the employee admitted fault. Plaintiffs and OSP then agreed to vacate the trial and have the court rule on the cross-motions for summary judgment, based on the evidence in the stipulated facts and attachments to various pleadings. After the court granted summary judgment in favor of OSP, plaintiffs and the employee agreed that judgment could be entered against the employee for a stipulated amount of damages.

█ Plaintiffs contend the trial court erred when it determined that, as a matter of law, the employee was outside the scope of his employment when he caused the accident. We are not persuaded.

█ An employer is liable for the damages an employee negligently causes while within the scope of employment. That scope is determined by the purpose of the employ-

ee's act, rather than the method of performance. Thus, if the negligent act or omission was in the service of the employer's business, the employer is liable, even though the employer did not authorize the manner of performance. *Hynes v. Donaldson,* 155 Colo. 456, 395 P.2d 221 (1964); *Gibson v. Dupree,* 26 Colo.App. 324, 144 P. 1133 (1914).

■ Acts within the scope of employment include those that are necessarily incidental to the employment. For example, if an employee is required to eat and sleep away from home in order to carry on the employer's business, then the employee is within the scope of employment while doing so. The employee is likewise within the scope of employment while traveling to and from such necessary lodging and meals. *Hynes v. Donaldson, supra.*

■ However, not every action an employee takes while on an assignment out of town necessarily falls within the scope of employment. The central inquiry remains whether the employee is engaged in an activity that bears some relationship to the employer's business. *Hynes v. Donaldson, supra; McQueen v. Robbins,* 28 Colo.App. 436, 476 P.2d 57 (1970); *see also Ellerman v. Kite,* 625 P.2d 1006 (Colo.1981); *cf.* 1 Larson's, *Workers' Compensation Law* § 14.00 (1998).

Here, the facts relied on by the parties, in addition to those already stated, were that OSP provided its employees lodging in apartments. It also provided several company trucks, and the employee drove one of the trucks to and from work. However, OSP did not permit him to use the truck for personal errands, meals, entertainment, or any other purposes not directly related to his work.

While assigned to work in Denver, the employee visited his home out of state and returned with his personal vehicle. He drove the vehicle for personal errands and sometimes gave rides to other workers. OSP did not object to the employee driving his personal vehicle for such purposes, but it did not reimburse any of his expenses. A restaurant and grocery store were within walking distance of the lodging provided.

OSP provided the employee, in addition to free lodging, a per diem allowance in cash each Friday. The employee would occasionally drive other crew members in his own vehicle on weekends to socialize at local bars, and OSP supervisors would occasionally participate. OSP did not object to such social gatherings or the consumption of alcohol on weekends when work was not required the following day, but it did not require or encourage these activities as a matter of company policy.

During the day preceding the accident, the employee had stopped working around 3:00 p.m. Between 8:00 and 10:00 p.m., he and the other two crew members drove to the bar. At the bar, they "danced and drank beer" until approximately 1:30 a.m. When they left the bar, they bought some tacos from a food truck in the bar's parking lot, ate them, and began the drive back to their lodging. The accident occurred on the trip between the bar and the apartment house.

In these circumstances, neither the purpose of the employee's trip nor the activities during the trip were in the service of OSP, and none of the activities was necessarily incidental to the employment. Thus, at the time of the accident the employee was not within the scope of his employment.

Plaintiffs seek to have us reach a different conclusion because the employee and other crew members had eaten some food and were returning to their lodging when the accident occurred. Hence, according to plaintiffs' argument, at the time of the accident the employee had resumed activities for which OSP can be held liable.

■ We recognize that when an employee merely deviates from a mission for an employer but has then resumed the mission when the employee's negligence occurs, the employer may be liable for the tort committed under the doctrine of *respondeat superior.* *See Gibson v. Dupree, supra.* We may further assume, without deciding, that the employer may likewise be liable when the employee has deviated from, and then resumed, activities necessarily incidental to employment away from home, such as eating and sleeping. *See generally Fitzpatrick v. United States,* 754 F.Supp. 1023 (D.Del. 1991); *Short v. United States,* 245 F.Supp.

591 (D.Del.1965). Nevertheless, the doctrine is not applicable in the circumstances presented here.

The employee's trip had begun between 8:00 and 10:00 p.m., several hours after work had ceased. The purpose of the trip from the start was personal entertainment. The "meal" the employee and the other crew members consumed before starting back to their lodging was itself incidental to the trip to the bar and the late hour at which they left the bar—not to the necessities of employment away from home. *See Liberty Mutual Insurance Co. v. Electronic Systems, Inc.,* 813 F.Supp. 802, 810 (S.D.Fla. 1993)(while activities related to the necessities of travel, such as eating in restaurants or sleeping in hotels, may remain within the scope of employment under tort law, "those related to mere amusements do not"); *see also Alexander Film Co. v. Industrial Commission,* 136 Colo. 486, 319 P.2d 1074, 1075 (1957)(activities such as eating meals are necessarily incidental to employment away from home because they are necessary to the continuance of the work and are therefore within the scope of employment, so long as they are performed "in a normal and prudent manner"); *McQueen v. Robbins, supra* (result in the *Hynes* case was based on the rationale that the acts of the employee involved there bore some relationship to the business of the employer).

We are likewise not persuaded to reach a contrary result by plaintiffs' reliance on cases deciding whether, for purposes of workers' compensation coverage, a worker's injuries "arose out of and in the course of employment." *See PDM Molding, Inc. v. Stanberg,* 898 P.2d 542, 546 (Colo.1995). We recognize that workers' compensation cases have on occasion been relied upon in determining the scope of employment for other purposes. *See Capra v. Tucker,* 857 P.2d 1346 (Colo.App.1993)(applying workers' compensation law to determine whether public employee's negligence occurred within scope of employment for purposes of the Governmental Immunity Act).

However, even for purposes of workers' compensation, the supreme court has observed that not every act by an employee working away from home is compensable:

> He might rob a bank; *he might attend a dance;* or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment and would constitute a stepping aside from the employment.

*Alexander Film Co. v. Industrial Commission, supra,* 136 Colo. at 492, 319 P.2d at 1078 (emphasis added).

Furthermore, despite some similarities in analysis, the scope of employment for purposes of workers' compensation and *respondeat superior* liability is not always the same:

> [W]hile perhaps ninety percent of the decisions on the course of employment in routine cases are interchangeable between the two fields [of workers' compensation and *respondeat superior* liability], the analogy breaks down in certain close cases because of a fundamental difference between the two types of liability. In the law of *respondeat superior,* the harmful force is always an act of the servant, or at least the omission which is the equivalent of an act. The inquiry is whether performance of the act was in furtherance of the master's business. But in many workers' compensation situations, the harmful force is not the employee's act, but something *acting upon* the employee.

1 Larson, *supra,* § 14.00 at 4–1 (emphasis in original).

Put another way, the scope of employment may be treated differently because the policy considerations for imposing liability on employers, as a matter of social duty, differ. As a result, "there may be situations where it may be proper to hold an employer liable for compensation benefits to the employee and yet not hold the employer responsible for that employee's conduct in causing injury to a third person arising out of the same situation." *See Liberty Mutual Insurance Co. v. Electronic Systems, Inc., supra,* 813 F.Supp. at 806.

In sum, we conclude that, at least for purposes of determining *respondeat superior*

liability, the employee was not within the scope of his employment at the time of the accident. We therefore find no error in the trial court's grant of summary judgment in favor of OSP.

Judgment affirmed.

Judge RULAND and Judge KAPELKE concur.